FILED
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 3 0 2019

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION, LITTLE ROCK

---------------------------------------------------

BRANDI WORTHAM,

        Plaintiff,

    v.

BENTON POLICE DEPARTMENT, CITY OF
BENTON

        Defendant.

---------------------------------------------------

**COMPLAINT**   4:19-cv-69-KGB

**JURY TRIAL DEMANDED**

This case assigned to District Judge _Baker_____
and to Magistrate Judge _Ray_____

Plaintiff, BRANDI WORTHAM, by and through her undersigned counsel, EISENBERG & BAUM, LLP, as and for her Complaint against Defendants, BENTON POLICE DEPARTMENT ("BPD") and CITY OF BENTON, hereby alleges as follows:

## PRELIMINARY STATEMENT

1.    Plaintiff, Brandi Wortham, is a deaf individual whose primary and preferred means of communication is American Sign Language ("ASL"). On or about March 11, 2017, at or about 2:00 P.M., police officers from the City of Benton Police Department ("BPD") responded to a call made from the residence of Ms. Wortham. The caller reported that Ms. Wortham's minor daughter, was possibly sexually assaulted the evening prior. Ms. Wortham was hosting a birthday party for her son, upon the arrival of the police officers. Despite immediately becoming aware that Ms. Wortham was deaf, the officers did not request a qualified ASL interpreter. Instead, they attempted to communicate to Ms. Wortham by writing on a piece of paper, directing Ms. Wortham to go upstairs with her daughter to be interviewed. Once upstairs, the officers proceeded to talk directly to her daughter without requesting an ASL interpreter for Ms. Wortham. The police officers then transported

Ms. Wortham, daughter, Ms. Wortham's son,  and her son's friend, to the Benton Police Department to be interviewed further. Despite her requests, an interpreter still had not been obtained for Ms. Wortham. Once at the police station, Ms. Wortham and her son were brought to a room to be interviewed by the police. The officers began interrogating her son about the allegations made by Chloe. Despite Ms. Wortham again requesting an ASL interpreter one was not provided. One of the police officers subsequently told Ms. Wortham that the law did not require the police officers to provide an interpreter. Ms. Wortham alleges that the defendants discriminated against her by failing to accommodate her disability, leading to her being deprived of the right to participate and understand what was happening with her minor daughter and her minor son, as well as being unable to communicate her needs. This traumatic experience caused Ms. Wortham humiliation, frustration, embarrassment and fear.

2.      Due to physical, environmental, and pedagogical factors, many deaf individuals, including Ms. Wortham, have difficulty acquiring English. Indeed, the median reading level of deaf high school graduates is fourth grade. This is because English is generally a second language (after ASL or another form of sign language) for individuals who are born deaf or become deaf before acquiring language. In addition, many deaf people acquire English as their second language later in life, and well past the critical developmental period of language acquisition. Despite this, Defendants failed to provide and to properly accommodate Plaintiff's disability through qualified ASL interpreters to communicate regarding complex and emotionally fraught matters.

3.      Lip-reading, the ability to understand the speech of another by watching the speaker's lips, does not provide effective communication for most deaf and hard of hearing individuals. In fact, the upper limits of estimates for lip-reading accuracy, in an ideal one-on-one situation, have been as low as 10% to 30% of correct words. This is because only a small amount

2

of the spoken sounds of aural language are visible, and many of those appear identical on the lips. Despite this, BPPD and the City of Benton failed to provide and to properly accommodate Plaintiff's disability through qualified ASL interpreters.

4.      Plaintiff brings this lawsuit to compel Defendants to cease unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity to participate in and benefit from its services. Plaintiff seeks declaratory and equitable relief, monetary damages, and attorneys' fees to redress Defendants' unlawful discrimination on the basis of disability in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq., and its implementing regulation, 28 C.F.R. Part 35; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 791; and other state and common law causes of action.

## PARTIES

5.      Plaintiff, BRANDI WORTHAM (hereinafter "Plaintiff" or "Ms. Wortham") is an individual residing at 1107 Oxford Avenue, Benton, Arkansas 72019. Ms. Wortham is profoundly deaf and communicates primarily in American Sign Language ("ASL"). She is substantially limited in the major life activities of hearing and speaking, and is a qualified person with a disability within the meaning of the ADA and the Rehabilitation Act.

6.      Defendant, BENTON POLICE DEPARTMENT ("BPD") is a municipal police force and a governmental agency of the City of Benton, and is therefore a department, agency, special purpose district, or other instrumentality of a local government within the meaning of Title II of the ADA, 42 U.S.C. § 12131(1)(B).

7.      Defendant, CITY OF BENTON, is a public entity and recipient of federal

financial assistance, thus making each entity identified above subject to the requirements of the Rehabilitation Act.

**JURSIDICTION AND VENUE**

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28

11 U.S.C. §§ 1331 and 1343 for claims arising under Title II of the ADA, 42 U.S.C §§ 12131, et seq. and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. This Court has supplemental jurisdiction over Plaintiff's state and local law claims under 28 U.S.C. § 1367.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because substantial part of the events that give rise to the claims occurred in, and the parties all reside within the jurisdiction of, the Eastern District of Arkansas.

**STATEMENT OF FACTS**

10.      Brandi Wortham is profoundly deaf individual who communicates primarily through American Sign Language ("ASL").

11.      Ms. Wortham has three minor children.  All three children have normal hearing.

12.      On or about March 11, 2017, at or about 1:30 P.M., Ms. Wortham hosted a birthday party for her youngest son, at her home.

13.      Upon information and belief, Ms. Wortham's daughter, who attended the birthday party, told two of her relatives who were present that her brother, attempted to inappropriately touch her the evening prior.

14.      Upon information and belief, another guest at the birthday party who is also a police officer called the Benton Police Department, and reported a possible sexual assault based on this information.

4

15.     Upon information and belief, at or about 2:00 P.M., two police officers from the Benton Police Department responded to the report and arrived at Ms. Wortham's residence.

16.     Despite becoming aware that Ms. Wortham was deaf, the police officers did not obtain a qualified ASL interpreter to come to the scene.

17.     Upon information and belief, both police officers are hearing, and neither have the ability to communicate using sign language.

18.     Upon information and belief, the police officers attempted to communicate with Ms. Wortham by writing on a piece of paper that she go upstairs with them and her daughter, to be interviewed.

18.     Ms. Wortham's daughter is not a qualified ASL interpreter.

20.     Upon information and belief, the police officers began directly communicating with Chloe. As a result of no qualified ASL interpreter being present, Ms. Wortham could not understand what was being said and was unable to effectively communicate with the police officers.

21.     Upon information and belief, Ms. Wortham advised the police officers that she did not understand what they were saying and requested that an ASL interpreter be provided. Despite this request, the police officers failed and/or refused to obtain an ASL interpreter.

22.     Upon information and belief, the police officers subsequently transported Plaintiff, her daughter, her son, and her son's friend to the Benton Police Department without requesting an interpreter.

23.     Upon information and belief, Ms. Wortham and her son, were instructed to go inside a room to be interviewed without the aid of a qualified ASL interpreter.

24.     Without the aid of a qualified ASL interpreter, not only did Ms. Wortham not have a complete understanding of what questions the officers were asking her son, she did not know how long he or she would be detained at the Benton Police Department.

25.     Upon information and belief, during her time in the interview room, the officers did not provide a qualified ASL interpreter, or any other form of accommodation to ensure effective communication, to Ms. Wortham.

26.     Upon information and belief, the officers also refused Ms. Wortham's request to have her son interpret after refusing her multiple requests for an ASL interpreter.

28.     Upon information and belief, Ms. Wortham again requested an ASL interpreter, asking, "Where is the interpreter?" A police officer told her to wait and then refused her request, stating that they police could not get an interpreter.

29.     Upon information and belief, after refusing to obtain an interpreter, a police officer said, "There's no law for that!" Ms. Wortham replied, "Yes, it's the law for an ASL interpreter to communicate with me!"

30.     Ms. Wortham's inability to communicate with BPD officers while both at her residence and at the police station, and the confusion caused by the BPD's failure to accommodate her disability, left Ms. Wortham isolated and uninformed, causing her anxiety, fear, and frustration.

31.     The BPD did not, at any point, provide Ms. Wortham with adequate auxiliary aids and services to enable her to effectively communicate, despite her requests for an ASL interpreter or make a phone call.

32.     In most instances, effective communication could not have taken place without the aid of a qualified ASL interpreter.

6

33.     Upon information and belief on the City of Benton's website, under a section on its homepage titled "ADA" it states that, "The City of Benton is committed to non-discrimination and full accessibility of services, programs, and activities for individuals with disabilities. The City intends to uphold the regulations under the Americans with Disabilities Act of 1990 (ADA) to the highest possible degree. It is the responsibility of the City to ensure that no individual feels excluded, denied benefits, or discriminated against based on a disability."

34.     Defendants knowingly limited Ms. Wortham to the little communication she could achieve through vague gestures, written notes, and the few words she could understand through reading lips.

35.     Defendants knew or should have known of its obligations under the ADA and Section 504, to provide accommodations to individuals with disabilities, including individuals who are deaf or hard of hearing, and to develop policies to promote compliance with these statutes.

36.     Defendants knew or should have known that its actions and/or inactions created an unreasonable risk of causing Ms. Wortham greater levels of fear, anxiety, indignity, humiliation, and/or emotional distress than a hearing person would be expected to experience.

37.     As a result of Defendants' failure to ensure effective communication with Ms. Wortham, she received services that were objectively substandard and that were inferior to those provided to persons who are hearing, and thus, was subjected to discriminatory treatment because of her disability.

38.     Defendants have demonstrated, through its interactions with Ms. Wortham, that BPD's officers are not properly trained on how to interact with deaf individuals, resulting in significant delays and communication breakdowns.

39.     Defendants' wrongful and intentional discrimination against Ms. Wortham on the basis of disability is reflected by the Defendant's failure to train employees and agents and promulgate policies of non-discrimination against deaf individuals.

40.     Upon information and belief, Defendants do not have any policies that allow Deaf individuals meaningful access to auxiliary aids and services for effective communication.

41.     Ms. Wortham, as a resident of the City of Benton, expects to have future encounters with the Benton Police Department, as she lives within the City of Benton.

42.     Ms. Wortham is deterred from seeking the aid or protection of the BPD due to the discrimination she expects to face if she does so.

43.     Defendants intentionally discriminated against Ms. Wortham and acted with deliberate indifference to her communication needs, causing her to endure humiliation, shame, fear, anxiety, and emotional distress.

44.     Defendants knew or should have known of its obligations under the ADA and Section 504, to not use family members as interpreters to communicate Deaf or hard of hearing individuals, and to develop policies to promote compliance with these statutes.

45.     Defendants knew or should have known that its actions and/or inactions created an unreasonable risk of causing Ms. Wortham greater levels of fear, anxiety, indignity, humiliation, and/or emotional distress than a hearing person would be expected to experience.

## CLAIM ONE: AMERICANS WITH DISABILITIES ACT

46.     Plaintiff repeats and re-alleges all preceding paragraphs in support of this claim.

47.     At all times relevant to this action, Title II of the ADA, 42 U.S.C. §§ 12131 et seq., has been in full force and effect and has applied to Defendants' conduct.

8

48.     At all times relevant to this action, the United States Department of Justice regulations implementing Title II of the ADA, 28 C.F.R. Part 35, have been in full force and effect and have applied to the Defendant's conduct.

49.     At all times relevant to this action, Ms. Wortham has been substantially limited in the major life activities of hearing and speaking, and is considered an individual with a disability as defined in the ADA, 42 U.S.C. § 12102(2).

50.     Defendant, City of Benton, through the Benton Police Department, is a public entity as defined under Title II of the ADA, 42 U.S.C. § 12131(1).

51.     Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

52.     Federal Regulations implementing Title II of the ADA state that a public entity may not "(i) deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service; (ii) afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others; [or] (iii) provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." 28 C.F.R. § 35.130(b)(1).

53.     Federal Regulations implementing Title II of the ADA state that a public entity "shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1).

9

54.     Federal Regulations implementing Title II of the ADA state that a public entity "shall furnish appropriate auxiliary aids and services where necessary," and "in order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b).

55.     Title II of the ADA states that auxiliary aids and services include, but are not limited to, "qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments." 42 U.S.C. § 12103.

56.     Federal Regulations implementing Title II of the ADA provide examples of other effective methods of accommodation, such as qualified interpreters on-site or through video remote interpreting (VRI) services; real-time computer-aided transcription services; written materials; voice, text, and video-based telecommunications products and systems, including text telephones (TTYs), videophones, and captioned telephones, or equally effective telecommunications devices; and videotext displays. 28 C.F.R. § 35.104.

57.     Federal Regulations implementing Title II of the ADA provide that a public entity shall not rely on a minor child to interpret or facilitate communication, except in an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available. 28 CFR 35.160(c)(3)

58.     When determining what type of auxiliary aid and service is necessary, "a public entity shall give primary consideration to the requests" of the individual with the disability. 28 C.F.R. § 35.160(b)(2).

59.     Federal Regulations implementing Title II of the ADA state that a public entity "shall not rely on an adult accompanying an individual with a disability to interpret or facilitate

communication except in an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available." 28 C.F.R. § 35.160(c).

60.     Defendants discriminated against Ms. Wortham on the basis of disability by excluding her from participation in and denying her the benefits of its services, and by subjecting her to discrimination, in violation of the ADA.

61.     Defendants further discriminated against Ms. Wortham by failing to ensure effective communication through the provision of a qualified in-person interpreter.

62.     Defendants' failure to provide effective communication to Ms. Wortham denied her the same access to Defendants' services, benefits, activities, programs, or privileges as the access provided to hearing individuals.

63.     Defendant, City of Benton, through the BPD, further discriminated against Ms. Wortham by failing to train its officers to accommodate disabled individuals and failing to modify discriminatory practices and procedures, as required by the ADA.

64.     Defendants' violation of Ms. Wortham's rights under the ADA caused her to suffer from discrimination, unequal treatment, and exclusion.

65.     Ms. Wortham is therefore entitled to compensatory damages for the injuries and loss sustained as a result of Defendants' deliberate indifference as hereinbefore alleged, as well as an award of attorney's fees, costs, and disbursements, pursuant to the ADA, 42 U.S.C. § 12133.

## CLAIM TWO: REHABILITATION ACT

66.     Plaintiff repeats and re-alleges all preceding paragraphs in support of this claim.

67.     At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, has been in full force and effect and has applied to the Defendant's (BPD) conduct.

11

68.    At all times relevant to this action, Ms. Wortham has had substantial impairment to the major life activities of hearing and speaking within the meaning of 45 C.F.R. § 84.3(j), and accordingly, she is individual with a disability as defined under 29 U.S.C. § 708(20)(B).

69.    Pursuant to Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

70.    Defendants discriminated against Ms. Wortham on the basis of disability by denying her meaningful access to the services, programs, and benefits the Defendants offer to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of Section 504 of the Rehabilitation Act.

71.    Defendants further discriminated against Ms. Wortham by failing to ensure effective communication through the specific provision of a qualified in-person interpreter.

72.    Defendant, City of Benton through the BPD, further discriminated against Ms. Wortham by failing to train its officers to accommodate disabled individuals and failing to modify discriminatory practices and procedures, as required by the Rehabilitation Act.

73.    Ms. Wortham is therefore entitled to seek and recover compensatory damages for the injuries and loss sustained as a result of Defendants' discriminatory conduct as hereinbefore alleged, as well as an award of attorney's fees, costs, and disbursements, pursuant to the Rehabilitation Act, 29 U.S.C. § 794.

## CLAIM THREE: ARKANSAS CIVIL RIGHTS ACT

12

74.     Plaintiff repeats and reiterates every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

75.     At all times relevant to this action, the Arkansas Civil Right Act, A.C.A. § 16-123-107(a)(2), was in full force and effect and applied to the Defendant's conduct.

76.     At all times relevant to this action, Plaintiff has been a person with a disability within the meaning of, A.C.A. § 16-123-102(3).

77.     At all times relevant to this action, Defendant's facilities were places of public resort within the meaning of A.C.A. § 16-123-102(7).

78.     Pursuant to A.C.A § 16-123-107(a)(2) "The right of an otherwise qualified person to be free from discrimination because of race, religion, national origin, gender, or the presence of any sensory, mental, or physical disability is recognized as and declared to be a civil right. This right shall include, but not be limited to...the right to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement."

79.     Plaintiff is an aggrieved person under the A.C.A

80.     Pursuant to A.C.A § 16-123-107(b) "Any person who is injured by an intentional act of discrimination in violation of subdivisions (a)(2)-(5) of this section shall have a civil action in a court of competent jurisdiction to enjoin further violations, to recover compensatory and punitive damages, and, in the discretion of the court, to recover the cost of litigation and a reasonable attorney's fee."

## PRAYER FOR RELIEF

81.   **WHEREFORE**, Ms. Wortham respectfully prays that this Court grant the following relief against Defendants:

82.   Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation of Title II of the Americans with Disabilities Act, Arkansas Civil Right Act and Section 504 of the Rehabilitation Act;

83.   Enjoin Defendants from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals meaningful access to and full and equal enjoyment of Defendants' facilities, services or programs;

84.   Order Defendant Benton Police Department (BPD):

a.   to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Plaintiff or other deaf or hard of hearing individuals by failing to provide effective communication;

b.   to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual is arrested, Defendants will evaluate the individual's need for an accommodation;

c.   to develop, implement, promulgate, and comply with a policy requiring that Defendants will assess and then provide the appropriate accommodations to deaf and hard of hearing individuals during an investigation, emergency response, and/or arrest;

d.   to develop, implement, promulgate, and comply with a policy requiring Defendants to provide the proper interpretive services, TDD, videophones, and other assistive devices that are required for deaf and hard of hearing individuals to fully participate in and benefit from the programs and services offered by these public entities.

14

e.     to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an on-site interpreter for effective communication, one will be provided as soon as practicable in all services offered by Defendants;

f.     to develop, implement, promulgate, and comply with a policy to ensure that Defendants will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that Defendants will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

g.     to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing individuals are able to communicate through the most appropriate method under the circumstances

h.     to create and maintain a list of American Sign Language interpreters and ensure availability of such interpreters at any time of day or night;

i.     to train all its employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA and Section 504 of the Rehabilitation Act;

85.   Award to Plaintiff:

a.     Compensatory damages pursuant to Title II of the ADA, Arkansas Civil Right Act and Section 504 of the Rehabilitation Act;

b.     Reasonable costs and attorneys' fees pursuant to the ADA, Arkansas Civil Right Act and Section 504 of the Rehabilitation Act;

     c.       Interest on all amounts at the highest rates and from the earliest dates allowed by law;

     Any and all other relief that this Court finds necessary and appropriate.

## JURY DEMAND

     Plaintiff demands trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

Dated: January 28, 2019

Respectfully submitted,

By: _____

Andrew Rozynski, Esq.
arozynski@eandblaw.com

EISENBERG & BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
212-353-8700 (tel.)
212-353-1708 (fax)
*Attorneys for Plaintiff*

16